UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SHELL OFFSHORE INC.<br>    Plaintiff | CIVIL ACTION |
| VERSUS | NO. 16-15537 |
| ENI PETROLEUM US LLC, ET AL.<br>    Defendants | SECTION: "E" (2) |

## ORDER AND REASONS

Before the Court are three motions to dismiss filed by Defendants: (1) Eni Petroleum Co. Inc.'s ("Eni-Inc.") motion to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure[1]; (2) Eni Petroleum US LLC's ("Eni-LLC") and Eni-Inc.'s motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure[2]; and (3) Eni US Operating Co. Inc.'s ("Eni-Operating") motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[3] Shell Offshore Inc. ("Shell") opposes these motions.[4]

## LEGAL STANDARD

I. Rule 12(b)(2) of the Federal Rules of Civil Procedure

"Personal jurisdiction 'is an essential element of the jurisdiction of a district court, without which it is powerless to proceed to an adjudication.'"[5] When a non-resident defendant challenges personal jurisdiction in a motion to dismiss, the plaintiff bears the

---

[1] R. Doc. 14.
[2] R. Doc. 15.
[3] R. Doc. 76.
[4] R. Docs. 23, 24, 46, 77.
[5] *Anderson v. GlobalSantaFe Offshore Services, Inc.*, 924 F. Supp. 2d 738, 742 (E.D. La. 2013) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)).

1

burden of proving that personal jurisdiction exists.[6] If the district court rules on the motion without an evidentiary hearing, as in this case, the plaintiff need only make a *prima facie* showing of personal jurisdiction.[7] In determining whether the plaintiff has made a *prima facie* showing of personal jurisdiction, the district court must take the allegations of the complaint as true, except as controverted by opposing affidavits, and all conflicts in the facts must be resolved in favor of plaintiffs.[8] Thus, the district court may consider matters outside the complaint, including affidavits, when determining whether personal jurisdiction exists.[9]

To exercise personal jurisdiction over a non-resident defendant, two requirements must be satisfied. "First, the forum state's long-arm statute must confer personal jurisdiction. Second, the exercise of jurisdiction must not exceed the boundaries of the Due Process Clause of the Fourteenth Amendment."[10] Because Louisiana's long-arm statute confers personal jurisdiction to the limits of constitutional due process, these two inquiries become one and the same.[11]

The Due Process Clause of the Fourteenth Amendment "operates to limit the power of a State to assert *in personam* jurisdiction over a nonresident defendant."[12] For a court's exercise of personal jurisdiction over a non-resident defendant to be constitutional under the Due Process Clause, (1) "that defendant [must have] purposefully availed himself of

---

[6] *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)).
[7] *See id.* Because the Court previously granted Shell's request for jurisdictional discovery, the argument could be made that Shell is required to establish jurisdiction by the preponderance of the evidence. However, whether this higher standard is appropriate is irrelevant given that, for the reasons discussed below, Shell is unable to establish even a *prima facie* showing of the Court's personal jurisdiction over Eni-Inc.
[8] *Id. See also Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985).
[9] *Jobe v. ATR Mktg., Inc.*, 87 F.3d 751, 753 (5th Cir. 1996).
[10] *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006) (citation omitted).
[11] *Luv N' Care*, 438 F.3d at 469; La. R.S. 13:3201(B).
[12] *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14 (1984).

the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant [must] not offend 'traditional notions of fair play and substantial justice.'"[13]

The "minimum contacts" test takes two forms, depending on the type of jurisdiction the court seeks to exercise over the defendant: general jurisdiction or specific jurisdiction.

II. Rule 12(b)(6) of the Federal Rules of Civil Procedure

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief.[14] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[15] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[16] The court, however, does not accept as true legal conclusions or mere conclusory statements, and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[17] "[T]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements" or "naked assertion[s] devoid of further factual enhancement" are not sufficient.[18]

---

[13] *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (citation omitted).
[14] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).
[15] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).
[16] *Id.*
[17] *S. Christian Leadership Conference v. Supreme Court of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).
[18] *Iqbal*, 556 U.S. at 663, 678 (citations omitted).

In summary, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[19] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]'—that the pleader is entitled to relief."[20] "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'"[21]

## ANALYSIS

I. <u>Eni-Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction</u>

On November 29, 2016, Defendant Eni-Inc. filed a Rule 12(b)(2) motion to dismiss.[22] In responding to the motion, Shell requested the motion be denied or, in the alternative, that jurisdictional discovery be permitted.[23] On January 5, 2017, the Court granted the parties leave to conduct jurisdictional discovery through and including February 21, 2017.[24] The Court also ordered Shell to file a supplemental memorandum in response to Eni-Inc.'s 12(b)(2) motion to dismiss no later than February 21, 2017.[25] On February 21, 2017, Shell filed its supplemental memorandum in opposition to Eni-Inc.'s Rule 12(b)(2) motion to dismiss.[26] On February 28, 2017, Eni-Inc. filed its reply to Shell's supplemental memorandum.[27]

"Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists. The plaintiff need not, however, establish jurisdiction by a preponderance of the evidence; a *prima*

---

[19] *Twombly*, 550 U.S. at 555.
[20] *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).
[21] *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (per curiam) (quotations omitted).
[22] R. Doc. 14.
[23] R. Doc. 23, at 4.
[24] R. Doc. 35.
[25] *Id.*
[26] R. Doc. 46.
[27] R. Doc. 52.

4

*facie* showing suffices."[28] A federal court may exercise personal jurisdiction over a foreign defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant, and (2) the exercise of such jurisdiction comports with due process under the United States Constitution.[29] The limits of the Louisiana long-arm statute are coextensive with constitutional due process limits.[30] As a result, the Court must determine whether Eni-Inc. has purposefully availed itself of the benefits and protections of the forum state by establishing minimum contacts with the State of Louisiana and whether the exercise of jurisdiction over Eni-Inc. would offend traditional notions of fair play and substantial justice.

Shell argues the Court has personal jurisdiction over Eni-Inc. by virtue of the contacts of Eni-Inc.'s subsidiaries with the State of Louisiana.[31] As Shell correctly acknowledges in its supplemental opposition, "Generally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there; the mere existence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over the foreign parent."[32] "There may be instances," however, "in which the parent so dominates the subsidiary that 'they do not

---

[28] *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)).
[29] *Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999).
[30] *Id. See also* La. R.S. § 13:3201, *et seq.*
[31] R. Doc. 46 at 5-8. Eni-LLC and Eni-Operating do not contest that they are subject to this Court's personal jurisdiction. Most of Shell's argument relates to Eni-Inc.'s relationship with Eni-LLC; the Court also will address the possibility of exercising personal jurisdiction over Eni-Inc. by virtue of its relationship with Eni-Operating. In its original opposition to Eni-Inc.'s 12(b)(2) motion to dismiss, Shell focused on its argument that "some liabilities and responsibilities" related to the Joint Operating Agreement in question, "may remain with Eni Inc. depending upon the details of the transaction" in which the Eni entities were assigned Dominion Exploration & Production, Inc.'s assets in the Popeye Field. *See* R. Doc. 23 at 4. Shell's supplemental memo centers on its argument that the Court has personal jurisdiction over Eni-Inc. based on an alter-ego relationship with its subsidiaries; the Court considers its previous argument regarding the allocation of liabilities and responsibilities to be abandoned.
[32] R. Doc. 46 at 5-6 (citing *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983)).

5

in reality constitute separate and distinct corporate entities . . ."[33] The Fifth Circuit has explained that the following factors are relevant in determining whether the parent and subsidiary should be treated collectively for personal jurisdiction purposes: (1) the amount of stock owned by the parent of the subsidiary; (2) whether the two corporations have separate headquarters; (3) whether they have common officers and directors; (4) whether they observe corporate formalities; (5) whether they maintain separate accounting systems; (6) whether the parent exercises complete authority over general policy of the subsidiary; and (7) whether the parent exercises complete authority over daily operations of the subsidiary.[34]

In conducting this analysis, "[t]he allegations of the complaint, except as controverted by opposing affidavits, must be taken as true, and all conflicts in the facts must be resolved in favor of [the] plaintiff[]" for the purpose of determining whether a *prima facie* case for personal jurisdiction has been established.[35] "In making its determination, the Court may consider 'affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.'"[36] As explained above, "Courts have long presumed the institutional independence of related corporations, such as parent and subsidiary, when determining if one corporation's contacts with a forum can be the basis of a related corporation's contacts."[37] "This presumption of corporate separateness, however, may be overcome by clear evidence."[38]

---

[33] *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1363 (5th Cir. 1990).
[34] *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 339 (5th Cir. 1999) (citing *Hargrave*, 710 F.2d at 1160).
[35] *Alvarez v. Valero Refining-New Orleans, LLC*, 2012 WL 893466, at *1 (citing *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)).
[36] *Id.* (quoting *Thompson*, 755 F.2d at 1165).
[37] *Dickson Marine Inc.*, 179 F.3d at 338 (citing *cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 33 (1925)).
[38] *Id.* (citing *Donatelli v. National Hockey League*, 893 F.2d 459, 465 (1st Cir. 1990)).

"There must be evidence of one corporation asserting sufficient control to make the other its agent or alter ego."[39] "Moreover, the burden of making a prima facie showing of such symbiotic corporate relatedness is on the proponent of the agency/alter ego theory."[40]

    a. <u>Factor 1: The Amount of Stock Owned by Eni-Inc. in Eni-LLC and Eni-Operating</u>

Shell, in its Supplemental Memorandum alleges that Eni-Inc. owns 100% of Eni-BB, which owns 100% of Eni-LLC.[41] Shell also alleges that Eni-Inc. owns 100% of Eni-Operating.[42] Although Shell does not provide additional support for these allegations, Eni-Inc., in its Reply, states "[t]hese facts are accurate and undisputed," but argues, "they are not relevant to – and certainly do not establish – personal jurisdiction."[43]

The fact that Eni-Inc. owns 100% of Eni-Operating weighs in favor of the Court exercising jurisdiction over Eni-Inc.

With respect to the Court's jurisdiction over Eni-Inc. by virtue of its alter-ego relationship with Eni-LLC, Shell acknowledges that 100% of Eni-LLC's stock is owned not by Eni-Inc. but by Eni-BB, but points out that 100% of Eni-BB's stock is owned by Eni-Inc.[44] To establish a *prima facie* case that Eni-Inc.'s ownership of stock in Eni-BB equates to Eni-Inc.s ownership of stock in Eni-LLC, Shell would have to present clear evidence that Eni-BB and Eni-LLC were operating as a single entity or that the corporate veil between Eni-BB and Eni-LLC should be pierced. Shell has not made any allegations or produced any evidence to establish that Eni-BB and Eni-LLC operate as a single entity.

---

[39] *Id.* (citations omitted).
[40] *Id.* (citations omitted).
[41] R. Doc. 46 at 4, 6.
[42] *Id.* at 6.
[43] R. Doc. 52 at 6 (citing *Melson v. Vista World Inc. & Assocs.*, 2012 WL 6002680, at *5 (E.D. La. Nov. 30, 2012).
[44] R. Doc. 46 at 6.

Shell has failed to establish a *prima facie* case that Eni-Inc.'s ownership of stock in Eni-BB equates to Eni-Inc.'s ownership of stock in Eni-LLC.

The first factor, with respect to Eni-Operating, weighs in favor of the Court exercising jurisdiction over Eni-Inc. The first factor, with respect to Eni-LLC, weighs against the Court exercising jurisdiction over Eni-Inc.

      b. <u>Factor 2: Whether the Entities Share Headquarters</u>

Shell, in its Supplemental Memorandum, argues that Eni-Inc.'s Corporate Representative testified in his Rule 30(b)(6) deposition that Eni-Inc., Eni-Operating, Eni-BB and Eni-LLC share the same headquarters.[45] Eni-Inc., in its Reply, does not rebut Shell's argument.[46] The second factor, with respect to both Eni-Operating and Eni-LLC, weighs in favor of the Court exercising jurisdiction over Eni-Inc.

      c. <u>Factor 3: Whether the Entities Have Common Officers and Directors</u>

Shell, in its Supplemental Memorandum, argues that Eni-Inc. and Eni-LLC share the same board members.[47] Shell attaches to its Supplemental Memorandum, under seal, copies of the Secretary Certificates for Eni-Inc. and Eni-LLC which demonstrate substantial overlap of individuals who serve as board members, directors or officers for the two entities. In response, Eni-Inc. argues, "Shell incorrectly asserts that in 2007 both entities had the same board members and that in 2016 the entities still shared the same board members. Although there was some overlap in Eni-Inc.'s and Eni-LLC's board members during this time, the two companies have never had identical boards."[48] The third factor does not center on whether the entities have *identical* officers and directors,

---

[45] *Id.* (citing R. Doc. 46-1 at 18 lns. 10-16 (Transcript of Rule 30(b)(6) deposition of Eni-Inc.)).
[46] *See* R. Doc. 52.
[47] R. Doc. 46 at 7-8 (citing R. Doc. 46-2 (Sealed copy of (1) Secretary Certificate, The Managers of Eni Petroleum US, L.L.C. and (2) Secretary Certificate of Eni Petroleum Co., Inc.)).
[48] R. Doc. 52 at 5 n.3.

but whether they have common officers and directors.[49] As is clear from the Court's review of the sealed Secretary Certificates, there is a significant overlap between officers and directors of Eni-Inc. and Eni-LLC.[50] The third factor with respect to Eni-LLC weighs in favor of the Court exercising jurisdiction over Eni-Inc.

Shell does not argue that Eni-Inc. and Eni-Operating have common officers or directors. The third factor with respect to Eni-Operating weighs against the Court exercising jurisdiction over Eni-Inc.

d. Factor 4: Whether the Entities Maintain Corporate Formalities

In *Huard v. Shreveport Pirates, Inc.*, the Fifth Circuit explained:

In determining whether to apply the alter ego doctrine, the totality of the circumstances must be considered; however, the following factors are usually considered relevant in evaluating adherence to corporate formalities: (1) commingling of corporate and shareholder funds; (2) failure to follow statutory formalities for incorporating and transacting corporate affairs; (3) undercapitalization; (4) failure to provide separate bank accounts and bookkeeping records; and (5) failure to hold regular shareholder and director meetings.[51]

Shell has not made any allegations or provided any evidence that corporate formalities are not observed.[52] It is Shell's burden to make a prima facie showing that corporate formalities have not been observed, and it has failed to do so. As the Fifth Circuit has consistently explained, "Where a parent and subsidiary observe corporate formalities, the plaintiff has a heavy burden to establish a degree of control sufficient to impute the subsidiary's jurisdictional contacts to a parent,"[53] Shell's failure to make a

---

[49] *See, e.g. Administrators of Tulane Educ. Fund v. Ipsen, S.A.*, 450 F. App'x 326, 330 (5th Cir. 2011) ("[T]he district court found . . . that the two corporations have a number of *common* officers and directors.").
[50] *See* R. Doc. 46-2.
[51] 147 F.3d 406, 409-10 (5th Cir. 1998) (citations omitted) (discussing the standard under Louisiana law).
[52] *See* R. Doc. 46.
[53] *Administrators of Tulane Educ. Fund v. Ipsen, S.A.*, 450 F. App'x 326, 331 (5th Cir. 2011) (citations omitted).

prima facie showing with respect to factor four weighs heavily against the Court exercising jurisdiction over Eni-Inc. by virtue of its relationship to Eni-LLC or Eni-Operating.

  e. <u>Factor 5: Whether the Entities Maintain Separate Accounting Systems</u>

Shell, in its Supplemental Memorandum, argues Eni-Inc., Eni-LLC, and Eni-Operating do not have separate accounting systems, but Shell's argument centers on the fact that Eni-Inc., for reporting purposes, has combined its financial records with Eni-Operating, Eni-BB and Eni-LLC.[54] In support of its argument, Shell cites to the deposition transcript of Eni-Inc.'s Rule 30(b)(6) representative, Gary Clifford. During the deposition, Mr. Clifford testified that Eni-Inc. "consolidates all of its subsidiaries into a – its financials."[55] Mr. Clifford also testified that any profit made as a result of the Popeye assets by Eni-LLC would be consolidated to Eni-Inc.[56]

In its Reply, Eni-Inc. disputes Shell's assertion and argues, "Eni-Inc. and Eni-LLC maintain separate accounting systems and have separate state tax ID numbers in Texas."[57] Eni-Inc. attaches a copy of Eni-Inc.'s and Eni-LLC's tax payer ID numbers.[58] Eni-Inc. does not provide any information regarding whether Eni-Operating has its own tax payer ID number. Eni-Inc. also attaches its response to Shell's jurisdictional discovery requests in which Eni-Inc. informed Shell that it had no documents maintained in its accounting systems responsive to a request for all accounting documents relating to the Popeye assets.[59] Eni-Inc. argues the absence of documents relating to the Popeye assets

---

[54] R. Doc. 46 at 1, 8 (citing R. Doc. 46-1 at 41 lns. 1-17). Shell also argues that Eni-Inc. "provides funding to some of its subsidiaries." *Id.* at 8 (citing R. Doc. 46-1 at 57 lns. 6-9). The deposition testimony cited by Shell does not support this assertion. *See* R. Doc. 46-1 at 57 lns. 6-9.
[55] R. Doc. 46-1 at 41 lns. 11-13.
[56] *Id.* at 57 lns. 12-16.
[57] R. Doc. 52 at 7.
[58] R. Doc. 52-2.
[59] R. Doc. 52-3 at 3.

in its accounting systems demonstrates that all Popeye documents and information are maintained in Eni-LLC's separate accounting system.[60] To prove the entities have separate accounting systems, Eni-Inc. agreed to make Eni-Inc.'s annual financial reports from 2007 to present available for inspection at the offices of Susman Godfrey LLP.[61]

Cases describing the analysis under the fifth factor generally look to whether the entities have "separate bank accounts, accounting and payroll systems, insurance contracts, budgets, and financial records."[62] Shell referenced only Gary Clifford's testimony that all of the Eni entities' financials are consolidated into Eni-Inc.'s financials for reporting purposes.[63] It is Shell's burden to make a prima facie showing that the entities did not maintain separate accounting systems and, in light of the evidence provided by Eni-Inc., it has failed to do so. The fifth factor weighs against the Court exercising jurisdiction over Eni-Inc. by virtue of its relationship with Eni-LLC or Eni-Operating.

      f. <u>Factor 6: Whether Eni-Inc. Exercised Complete Authority Over Eni-LLC's or Eni-Operating's General Policy</u>

Shell does not allege or argue that Eni-Inc. exercises complete authority over Eni-LLC's or Eni-Operating's general policy.[64] The sixth factor weighs against the Court exercising jurisdiction over Eni-Inc. by virtue of its relationship with Eni-LLC or Eni-Operating.

      g. <u>Factor 7: Whether Eni-Inc. Exercises Complete Authority Over the Daily Operations of Eni-LLC or Eni-Operating</u>

---

[60] R. Doc. 52 at 11.
[61] *Id.*.
[62] *See Alvarez*, 2012 WL 893466, at *3 (quoting *Hargrave*, 710 F.2d at 1160).
[63] R. Doc. 46 at 8 (citing R. Doc. 46-1 at 11).
[64] *See* R. Doc. 46. In its Supplemental Memorandum, Shell does allege that Eni-Inc. "exercised significant control over its subsidiaries" but it does not provide any support for this allegation. *Id.* at 8.

Shell argues that Eni-Inc. exercises authority over daily operations of both Eni-Operating and Eni-LLC through its control of Eni-Operating.[65] Shell argues that Eni-Operating "is the only subsidiary that has employees who manage the daily activities of Louisiana and Gulf of Mexico oil and gas leases."[66] Shell's argument appears to be that, if Eni-Inc. controls Eni-Operating and Eni-Operating is the only entity that conducts daily operations, Eni-Inc. must exercise control over the daily operations of all its subsidiaries. Shell does not provide evidentiary support for its allegation that Eni-Inc. controls Eni-Operating's daily operations. In its original motion to dismiss, Eni-Inc. disputes the allegation and attaches the sworn declaration of Gary Clifford, the Land and Business Development Director for Eni-Operating and Eni-Inc.'s Rule 30(b)(6) corporate representative, in which Mr. Clifford testifies that Eni-Inc. does not control the internal business operations and affairs of Eni-LLC.[67] It is Shell's burden to make a prima facie showing that Eni-Inc. exercises authority of the daily operations of Eni-LLC and Eni-Operating and, in light of the testimony offered by Eni-Inc., it has failed to do so. The seventh factor weighs against the Court exercising jurisdiction over Eni-Inc. by virtue of its relationship with Eni-LLC or Eni-Operating.

    h. <u>The Court May Not Assert Jurisdiction Over Eni-Inc. as a Result of Eni-LLC's or Eni-Operating's Contacts with the State of Louisiana</u>

After analyzing the seven factors and the caselaw, the Court finds that it does not have personal jurisdiction over Eni-Inc. Shell has failed to meet its burden of establishing a prima facie showing of personal jurisdiction. Most notably, Shell has failed to rebut the presumption of corporate separateness of Eni-Inc., Eni-LLC, Eni-Operating, and Eni-BB

---

[65] R. Doc. 46 at 6.
[66] *Id.*
[67] R. Doc. 14-2 at 3 ¶13 (Sworn Declaration of Gary Clifford).

by alleging or submitting any evidence that corporate formalities are not observed. "Where a parent and subsidiary observe corporate formalities, the plaintiff has a heavy burden to establish a degree of control sufficient to impute the subsidiary's jurisdictional contacts to a parent."[68] "[T]ypically, the corporate independence of companies defeats the assertion of jurisdiction over one by using contacts with another."[69]

Two factors weigh in favor of the Court exercising jurisdiction over Eni-Inc. by virtue of its relationship with Eni-LLC, and two factors weigh in favor of the Court exercising jurisdiction over Eni-Inc. by virtue of its relationship with Eni-Operating. But the majority of the factors weigh against the Court exercising jurisdiction by virtue of Eni-Inc.'s relationship with Eni-LLC and Eni-Operating, including the most important factor – whether the entities observe corporate formalities.

Eni-Inc.'s motion to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure is granted.[70]

II. <u>Eni-LLC's and Eni-Operating's Rule 12(b)(6) Motions to Dismiss Shell's Alternative Claim for Unjust Enrichment</u>

In their Rule 12(b)(6) motions to dismiss, Eni-LLC and Eni-Operating moved for the dismissal of Shell's claim for unjust enrichment alleging that the existence of a claim for breach of contract defeats one of the essential elements of an unjust enrichment action – lack of another remedy.[71] In response to Eni-LLC's motion to dismiss, Shell amended

---

[68] *Administrators of Tulane Educ. Fund*, 450 F. App'x 326, 331 (5th Cir. 2011) (citations omitted).
[69] *Access Telecomm., Inc. v. MCIK Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999).
[70] The Court has already provided Shell with the opportunity to conduct jurisdictional discovery. R. Doc. 35. Despite this opportunity, Shell has not provided the Court with sufficient evidence to establish a *prima facie* showing of personal jurisdiction.
[71] R. Docs. 15-1 at 6, 76-1 at 5. Eni-Inc. also joined Eni-LLC's motion but as discussed above, Eni-Inc. has been dismissed pursuant to Rule 12(b)(2). With respect to the two motions to dismiss Shell's unjust enrichment claim, the Court will refer only to Eni-Inc. and Eni-LLC's motion to dismiss, Record Document 15, and its related filings because Eni-Operating's motion to dismiss, Record Document 76, repeats the arguments raised in Record Document 15.

its complaint "to clarify that its claim for unjust enrichment is being plead[ed] as an alternative cause of action."[72] In its reply, Eni-LLC argues Shell's First Amended Complaint does not resolve the motion to dismiss with respect to Shell's unjust enrichment claim because "In Louisiana, by law, an unjust enrichment claim is a subsidiary claim, not an alternative claim."[73]

To support a claim for unjust enrichment under Louisiana law, a plaintiff must show five elements: (1) there must be an enrichment; (2) there must be an impoverishment; (3) there must be a connection between the enrichment and the resulting impoverishment; (4) there must be an absence of "justification" or "cause" for the enrichment and impoverishment; and (5) there must be no other remedy at law available.[74] "The Louisiana Supreme Court has observed that '[t]he mere fact that a plaintiff does not successfully pursue another available remedy does not give the plaintiff the right to recover under the theory of unjust enrichment.'"[75] "This is because [t]he unjust enrichment remedy is only applicable to fill a gap in the law where no express remedy is provided."[76]

"Louisiana law provides that no unjust enrichment claim shall lie when the claim is based on a relationship that is controlled by an enforceable contract."[77] As the Louisiana Supreme Court explained in *Carriere*, "The existence of a 'remedy' which precludes the

---

[72] *See* R. Doc. 24 at 1-2 (discussing R. Doc. 22).
[73] R. Doc. 31 at 3 (quoting *JP Mack Indus. LLC v. Mosaic Fertilizer, LLC*, 970 F. Supp.2d 516, 521 (E.D La. 2013)).
[74] *See JP Mack Indus. LLC*, 970 F. Supp. 2d at 520-21 (citing *Carriere v. Bank of Louisiana*, 95-3058 (La. 12/13/96), 702 So. 2d 648).
[75] *Id.* at 521 (alteration in original) (citing *Walters v. MedSouth Record Mgmt., LLC*, 2010-0351 (La. 6/4/10), 38 So. 3d 241, 242 (La. 2010) (per curiam)).
[76] *Perez v. Utility Constructors, Inc.*, 2016 WL 5930877, at *1 (E.D. La. Oct. 12, 2016) (internal citations and quotations omitted).
[77] *Drs. Bethea, Moustoukas & Weaver LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 407 (5th Cir. 2004) (citing *Edwards v. Conftronto*, 636 So. 2d 901, 907 (La. 11/29/93)). *See also*, *Double R & J Trucking Serv., Inc. v. Patton Installations of Florida, LLC*, 2015 WL 2452343, at *4 (E.D. La. May 21, 2015).

application of unjust enrichment does not connote the ability to recoup your impoverishment by bringing an action . . . [i]t merely connotes the ability to bring the action or seek the remedy."[78] Stated differently, "It is not the success or failure of the other causes of action, but rather the existence of other cause of action, that determine whether unjust enrichment can be applied."[79]

Shell argues that its claim for unjust enrichment, pleaded in the alternative, comports with the Federal Rules of Civil Procedure as well as Louisiana law.[80] Citing Federal Rules of Civil Procedure 8(d)(2) and 8(d)(3), Shell argues the Federal Rules explicitly allow a party to plead alternative and separate claims, regardless of consistency.[81] Further, quoting *Perez v. Utility Constructors, Inc.*, 2016 WL 5930877 (E.D. La. Oct. 12, 2016), Shell argues courts in this district have found, "Rule 8 allows [plaintiff] to plead both breach of contract and unjust enrichment even though those claims are inconsistent."[82]

As Eni-LLC and Eni-Operating correctly explain, "*Perez* noted and sought to reconcile the differing EDLA authorities by explaining that alternatively-pled unjust enrichment is only 'sometimes' permissible, depending on whether 'it is clear that the plaintiff has or had at one point another available remedy.'"[83] In *Perez*, the court explicitly acknowledged, "Until the validity of the alleged contract can be determined, [plaintiff's]

---

[78] *Carriere*, 702 So. 2d at 673).
[79] *Zaveri v. Condor Petroleum Corp.*, 27 F. Supp. 3d 695, 702 (W.D. La. 2014) (quoting *Garber v. Badon & Rainer*, 2007-1497 (La. App. 3 Cir. 4/2/08), 981 So. 2d 92, 100, *writ denied*, 2008-1154 (La. 9/19/08), 992 So. 2d 943).
[80] R. Doc. 24 at 5.
[81] *See id.*
[82] *Id.* (quoting *Perez*, 2016 WL 5930877, at *1).
[83] *Id.* at 6-7 (quoting *Perez*, 2016 WL 5930877, at *2 n.5 (internal marks omitted in original)). The Eni Defendants also argue *Perez* "is inconsistent with Louisiana law to the extent it permits alternative claims for unjust enrichment in any respect." *Id.* at 6 (citing *e.g., JP Mack*, 970 F. Supp. 2d at 521 & n.2; *Walters* 38 So. 3d at 246). As explained further below, this Court's Order and Reasons need not address Defendants' argument regarding the validity of *Perez*.

unjust enrichment claim should not be dismissed on the ground that [plaintiff] has another available remedy."[84] In *Perez*, the court found "genuine disputes of material fact preclude this Court from determining whether a contract existed for the extra work performed."[85] Because "[u]nder Louisiana law, a plaintiff does not have an available contractual remedy unless a valid contract existed," the *Perez* court held it was improper to dismiss plaintiff's alternative unjust enrichment claim as a result of plaintiff's breach of contract claim at that time.[86]

The limited holding in *Perez* does not apply to the case currently before this Court. Unlike *Perez*, in this case there is no genuine dispute of material fact as to whether a contract exists. Shell filed claims for breach of contract and open account against Eni-LLC and Eni-Operating[87] and Eni-LLC does not contest that Shell has alleged a viable breach of contract claim against it.[88] In its opposition, Shell states, "While not directly addressed in Eni's Motion, Eni Petroleum US LLC's statement that [Shell] 'does not have a valid claim under the [Unit Operating Agreement "UOA"] makes it clear that a motion on [Shell's] breach of contract claim against Eni Petroleum US LLC is forthcoming.'"[89] As a result, Shell argues:

> Given that the instant matter is in its early stages and Eni's suggestion that there are additional challenges to [Shell's] breach of contract claim against Eni Petroleum US LLC to be addressed, the Court should deny Eni's motion to dismiss and allow [Shell's] claim for unjust enrichment to proceed as an alternative claim.[90]

---

[84] *Perez*, 2016 WL 5930877, at *2 (internal quotations omitted).
[85] *Id.*
[86] *Id.*
[87] R. Docs. 1, 70.
[88] *See* R. Doc. 31 at 7 n.1 ("Shell alleged a plausible (albeit meritless) breach of contract claim against Eni-LLC and, thus, does not have an unjust enrichment claim.").
[89] R. Doc. 24, at 7 (quoting R. Doc. 15-1, at 1).
[90] *Id.*

Although a motion on Shell's breach of contract claim against Eni-LLC may be forthcoming, there is no indication that such a motion would be based on the absence of a contract.

Eni-LLC's admission that Shell has stated a "plausible" breach of contract claim against it also precludes an unjust enrichment claim against Eni-Operating. Courts have explained "the remedy provided by unjust enrichment is precluded where the available remedy at law is against someone other than the person against whom the claim is presently asserted."[91] As a result, the Court need not determine whether Shell has alleged a viable claim against Eni-Operating before determining that Shell's unjust enrichment claim against Eni-Operating must be dismissed because it is clear there is a breach of contract claim against Eni-LLC.

Eni-LLC and Eni-Operating's motions to dismiss Shell's alternative claim for unjust enrichment is granted.

III. Eni-Operating's Rule 12(b)(6) Motion to Dismiss Shell's Claims for Breach of Contract

Shell, in its Compliant, refers to Eni-Inc, Eni-LLC, and Eni-Operating collectively as "Eni" or the "Eni Defendants."[92] While Eni-LLC does not contest that Shell has alleged a viable breach of contract claim against it,[93] Eni-Operating argues that Shell has not adequately alleged it was a party to the Unit Operating Agreement and as a result Shell has not alleged a viable breach of contract claim against it.[94]

As Eni-Operating notes in its reply in support of its Rule 12(b)(6) motion to dismiss, "Shell's opposition lists a number of factual allegations, none of which are alleged

---

[91] *Zaveri*, 27 F. Supp. 3d 695, 702 (W.D. La. 2014) (citing *Carriere*, 702 So. 2d at 672-673).
[92] *See* R. Docs. 1 at 1 ¶4, 70 at 1 ¶4.
[93] *See* R. Doc. 41 at 7 n.1.
[94] R. Doc. 76-1 at 4.

17

in Shell's complaint, indicating that employees of Eni-Operating carry out some daily operations for Eni-LLC."[95] The Court construes these new factual allegations in Plaintiff's opposition memorandum as a motion to file an amended complaint.[96] Rule 15(a) "requires the trial court to grant leave to amend freely, and the language of this rule evinces a bias in favor of granting leave to amend."[97] A district court must possess a "substantial reason" to deny a motion under Rule 15(a).[98] Although Shell has already filed two amended complaints, the second of which was objected to by the Eni-LLC,[99] the Court finds that further amendment is necessary in order to resolve Eni-LLC's and Eni-Operating's motions to dismiss Shell's claim for breach of contract.

In its third amended complaint, Shell shall address the arguments raised by Eni-LLC and Eni-Operating in their motions to dismiss Shell's claim for breach of contract. Shell's allegations must be specific with respect to each Defendant, such that, (1) all allegations with respect to the parties to the Joint Operating Agreement name specific entities; (2) all allegations with respect to the assignment of rights under the Joint Operating Agreement identify the specific entity to which the assignment is made; (3) all allegations with respect to the daily operations of Eni-LLC conducted by Eni-Operating list the specific operation; and (4) the third amended complaint must list the causes of

---

[95] R. Doc. 82 at 3 (citing R. Doc. 77 at 6-7).
[96] *See Morin v. Moore*, 309 F.3d 316, 323 (5th Cir. 2002) ("This Court has held, that in the interest of justice a revised theory of the case set forth in the plaintiff's opposition should be construed as a motion to amend the pleadings filed out of time and granted by the district court pursuant to the permissive command of Rule 15.") (citing *Sherman v. Hallbauer*, 455 F.2d 1236, 1241 (5th Cir. 1972)); *Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 989 n.2 (5th Cir. 2008) (citing with approval cases in which the district court construed new allegations in opposition memorandum as motion to amend under Rule 15(a)).
[97] *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002) (internal quotation marks omitted).
[98] *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004). In deciding whether to grant leave under Rule 15(a), courts may consider factors such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Jones v. Robinson Prop. Grp.*, LP, 427 F.3d 987, 994 (5th Cir. 2005).
[99] *See* R. Doc. 60.

actions asserted against each Defendant. In addition, Shell should attach to its third amended complaint all documents referenced therein. Shell's third amended complaint must be filed as a restated and amended complaint, incorporating all allegations.

IV. <u>Eni-LLC's and Eni-Operating's Rule 12(b)(6) Motions to Dismiss Open Account</u>

Shell's claim on open account suffers from many of the same flaws described above with respect to its breach of contract claim. As a result, the Court defers ruling on Eni-LLC's and Eni-Operating's motions to dismiss Shell's claim based on an open account until Shell has had the opportunity to file its third amended complaint.

V. <u>Eni-LLC's Rule 12(b)(6) Motion to Dismiss Shell's Claim for Attorney's Fees</u>

In its original complaint, Shell alleged a claim for attorneys' fees.[100] Eni-LLC filed a motion to dismiss this count as attorneys' fees are "a remedy, not a cause of action."[101] On December 6, 2016, Shell filed its First Supplemental and Amended Complaint in which it amended its original complaint to remove the count for attorneys' fees under Section V, "Damages."[102] In its reply, the Eni-LLC acknowledged that Shell's First Supplemental and Amended Complaint "resolves [its] motion on this point."[103] Eni-LLC's motion to dismiss Shell's claim for attorneys' fees is dismissed as moot.

## CONCLUSION

For the foregoing reasons;

**IT IS ORDERED** that Eni-Inc.'s motion to dismiss[104] pursuant to Rule 12(b)(2) is **GRANTED**. The claims against Eni-Inc. are hereby **DISMISSED WITHOUT PREJUDICE.**

---

[100] R. Doc. 1 at 9.
[101] R. Doc. 15-1 at 2.
[102] R. Doc. 22 at 1.
[103] R. Doc. 31 at 10.
[104] R. Doc. 14.

19

**IT IS FURTHER ORDERED** that Eni-LLC's and Eni-Operating's motions to dismiss[105] are hereby **GRANTED IN PART**, **DEFERRED IN PART**, and **DISMISSED AS MOOT IN PART**.

**IT IS FURTHER ORDERED** that Eni-LLC's and Eni-Operating's motions to dismiss[106] are **GRANTED** to the extent they seek the dismissal of Shell's claim for unjust enrichment. Shell's claim for unjust enrichment is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the Court **DEFERS** ruling on Eni-LLC's and Eni-Operating's motions to dismiss[107] to the extent they seek the dismissal of Shell's breach of contract claim against Eni-Operating and Shell's open account claim against Eni-LLC and Eni-Operating.

**IT IS FURTHER ORDERED** that Shell shall have until **Thursday, August 24, 2017** at **5:00 p.m.** to file its third amended complaint. If Shell timely files timely files its third amended complaint, Eni-LLC's and Eni-Operating's 12(b)(6) motions[108] with respect to Shell's claims for breach of contract and open account will be dismissed as moot without prejudice. Eni-LLC and Eni-Operating will be free to re-urge their motions in a timely fashion.

**IT IS FURTHER ORDERED** that Eni-LLC's motion to dismiss[109] Shell's claim for attorney's fees is **DISMISSED AS MOOT.**

**New Orleans, Louisiana, this 17th day of August, 2017.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[105] R. Docs. 15, 76.
[106] *Id.*
[107] *Id.*
[108] *Id.*
[109] R. Doc. 15.