# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SHELL OFFSHORE INC.**<br>    **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-15537** |
| **ENI PETROLEUM US LLC, ET AL.**<br>    **Defendants** | **SECTION: "E" (2)** |

## ORDER AND REASONS

Before the Court is Plaintiff's Partial Motion to Dismiss claims asserted in Defendant's counterclaim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] The motion is opposed.[2] For the reasons set forth below, Plaintiff's motion is **DENIED**.

## BACKGROUND

Plaintiff, Shell Offshore Inc. ("SOI"), filed its original complaint on October 14, 2016,[3] its First Supplemental and Amended Complaint on December 6, 2012,[4] its Second Amended Complaint on April 6, 2017,[5] and its Third Restated and Amended Complaint on August 24, 2017.[6] Plaintiff alleges that SOI and Defendant, Eni Petroleum U.S., L.L.C. are parties to a Unit Operating Agreement effective June 15, 1998.[7] This Agreement covers the exploration, development, and production operations of blocks 72, 73, 116, and 117 of the Green Canyon Field, an area of the Outer Continental Shelf off the coast of Louisiana,

---

[1] R. Doc. 38.
[2] R. Doc. 44.
[3] R. Doc. 1.
[4] R. Doc. 22.
[5] R. Doc. 70.
[6] R. Doc. 119.
[7] R. Doc. 1, para. 7. This allegation is virtually identical in the Third Amended Complaint. R. Doc. 119, para. 7.

1

generally referred to as Popeye.[8] On November 1, 1992, the parties revised and amended the agreement, creating the revised unit operating agreement ("UOA").[9] The UOA is the operative agreement between the parties, and details the duties, responsibilities, and relationship between Plaintiff, as the operator designated in Section 5.1, and the non-operating parties. SOI seeks payment of joint interest billings related to the abandonment of four Popeye wells, which it alleges are due under the terms of the UOA and for damages under Louisiana's open account statute.[10]

On December 20, 2016, in its answer to the original complaint,[11] as supplemented by the First Supplemental and Amended Complaint, Defendant Eni Petroleum U.S., L.L.C. ("Eni") filed an amended answer, affirmative defense, and counterclaim against SOI.[12] Eni did not restate its counterclaim in its response to the Third Amended Complaint, and, as a result, the operative counterclaim is found in Eni's answer to the original and First Supplemental and Amended Complaint.[13]

Eni's counterclaim contains two primary allegations.[14] Count 1 of Defendant Eni's counterclaim alleges a breach and a bad faith breach of SOI's obligations under several provisions of the UOA, including but not limited to (1) the section 9.2 requirement that the operator not make any expenditure or undertake any project costing more than $300,000 without prior voting interest approval, (2) the section 24.1 requirement of

---

[8] *Id.*
[9] R. Doc. 115 at 5, ¶ 14.
[10] R. Doc. 119 at ¶ 18. Plaintiff's first amended complaint added Eni Operating Co., Inc. as Defendant. R. Doc. 22. Plaintiff's second amended complaint added Eni U.S. Operating Company, Inc. as a defendant. R. Doc. 70. Eni Operating Co, Inc. was subsequently dismissed as a party to the case on April 6, 2017, R. Doc. 70. On August 18, 2017, the Court dismissed the claims against Eni Petroleum Co., Inc., for lack of personal jurisdiction. R. Doc. 117. The remaining Defendants are Eni Petroleum U.S., L.L.C. and Eni U.S. Operating Company, Inc.
[11] R. Doc. 1.
[12] R. Doc. 32.
[13] R. Doc. 132.
[14] R. Doc. 38-1 at 2.

accurate financial disclosure, (3) the section 13.2 obligation to use competitive bidding when reasonable, and (4) the section 4 duty of reasonable practicability with regards to charging the joint account.[15] Count 2 of Defendant's counterclaim alleges a breach of the section 14.2 duty to obtain the unanimous consent of the parties before abandoning a producible well.[16] Eni alleges SOI violated the UOA by using the Atwood Condor drilling rig in connection with the abandonment of the Popeye wells, resulting in a charge to the joint account three times higher than the prevailing market rate.[17] Eni alleges SOI acted in bad faith, concealed important matters and facts, abused its position as operator, and engaged in gross negligence and willful misconduct.[18] Eni alleges these breaches cumulatively resulted in a loss of $23,982,569.76.[19]

SOI filed a Partial Motion to Dismiss Eni's counterclaim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[20] SOI argues, in part, that, even if SOI did breach the UOA, the exculpatory clause in UOA section 6.2 requires any claims against the designated operator be proven by a standard of "gross negligence or willful misconduct."[21] SOI contends Eni's claims fail to adequately allege facts that meet this higher standard of culpability, and therefore Eni has failed to state facts sufficient to make out a legally cognizable claim.[22] Eni filed an opposition to the motion to dismiss on February 24, 2017, arguing that section 6.2's exculpatory clause applies only to SOI's conduct related to its

---

[15] R. Doc. 44 at 12-14.
[16] R. Doc. 44 at 15.
[17] R. Doc. 32 at ¶¶ 28-32.
[18] R. Doc. 32, para. 21, 25, 26, 27, 28, 30, 31, 33, 34, 37, and 38.
[19] R. Doc. 32 at 20.
[20] R. Doc. 38.
[21] UOA § 6.2; R. Doc. 38 at 4.
[22] *Id.*

3

operations in the field and not to accounting or administrative conduct or other alleged breaches of the UOA.[23] SOI duly filed a reply.[24]

## **LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief.[25] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[26] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[27] The court, however, does not accept as true legal conclusions or mere conclusory statements, and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[28] "[T]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements" or "naked assertion[s] devoid of further factual enhancement" are not sufficient.[29]

In summary, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[30] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

---

[23] R. Doc. 44.
[24] R. Doc. 49.
[25] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).
[26] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).
[27] *Id.*
[28] *S. Christian Leadership Conference v. Supreme Court of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).
[29] *Iqbal*, 556 U.S. at 663, 678 (citations omitted).
[30] *Twombly*, 550 U.S. at 555.

show[n]'—that the pleader is entitled to relief."[31] "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'"[32]

## ANALYSIS

### I. As the Scope of the Exculpatory Clause is a Matter of First Impression in Louisiana, this Court Must Make an "Erie Guess"

A federal court sitting in diversity must apply state law as construed by the state's court of last resort.[33] As the parties agree, however, Louisiana courts have not definitively interpreted the scope of exculpatory clauses in joint operating agreements to determine whether they apply only to field operations or also to administrative duties of the operator.[34] "In the absence of a final decision by the state's highest court on the issue at hand, it is the duty of the federal court to determine, in its best judgment, how the highest court of the state would resolve the issue if presented with the same case."[35] That is, this Court must make an "*Erie* guess."[36] In so doing, this Court may consider, "among other sources, treatises, decisions from other jurisdictions, and the 'majority rule.'"[37] Accordingly, although cases interpreting the law of other states, including the Texas Supreme Court's decision in *Reeder v. Wood Cnty. Energy, LLC*,[38] may inform this Court's analysis of the UOA's exculpatory clause, they do not govern it.

The Fifth Circuit has discussed similar exculpatory provisions in two cases, but has not established a rule of decision that dictates a particular result in this case.[39] The Fifth

---

[31] *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).
[32] *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (per curiam) (quotations omitted).
[33] *Hughes v. Tobacco Inst.*, 278 F.3d 417, 420-21 (5th Cir. 2001) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).
[34] *See* R. Doct. 44 at 4; R. Doc. 49 at 3.
[35] *Am Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003).
[36] *Keen v. Miller Environmental Group, Inc.*, 702 F.3d 239 (5th Cir. 2012).
[37] *SMI Owen Steel Co. v. Marsh USA, Inc.*, 520 F.3d 342 (5th Cir. 2008).
[38] 395 S.W.3d 789, 794 (Tex. 2012).
[39] *Lee v. Frozen Food Exp. Inc.*, 592 F.2d 271 (5th Cir. 1979) ("Once a panel of this Court has settled on the state law to be applied in a diversity case, the precedent should be followed by panels without regard to

Circuit's decision in *Stine v. Marathon Oil Co.*,[40] which held that an exculpatory clause in an operating agreement "may extend to administrative functions performed by the operator,"[41] interpreted Texas law, not Louisiana law.[42] *Caddo Oil Co. v. O'Brien*[43] held that an operator owed no fiduciary duty to a non-operating party with regard to accounting obligations not expressly provided for in the operating agreement, but did not rule on the standard to be applied in breach-of-contract claims arising from specific contractual provisions.[44]

In short, this Court must look to the UOA's terms and determine "how the [Louisiana] Supreme Court would decide the question before us."[45]

## II. Section 6.2's Exculpatory Clause Only Governs Claims Arising From Field Operations, Not All Breaches of the UOA

When interpreting a contract, its meaning is "ordinarily determined from the instrument's four corners."[46] A contract must be interpreted to give "the words of the contract their common and usual significance."[47] "The Court's approach to a contract's meaning is driven by simple common sense principles."[48] In this case, neither party argues the UOA is ambiguous; the parties each argue their interpretation is mandated by the terms of the agreement.[49] As here, "[t]he fact that one party may create a dispute about

---

any alleged existing confusion in state law, absent a subsequent state court decision or statutory amendment which makes this Court's decision clearly wrong.").
[40] 976 F.2d 254 (5th Cir. 1992).
[41] *Id.* at 260.
[42] And in any event, *Stine* has questionable precedential value after *Reeder. See Lee*, 592 F.2s at 271.
[43] 908 F.2d 13 (5th Cir. 1990).
[44] *Id.* at 17.
[45] *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 593 (5th Cir. 2011).
[46] *Olympia Mineral, LLC v. HS Resources, Inc.*, 2013-2637 (La. 10/15/14); 171 So.3d 878.
[47] *Clovelly Oil Co., LLC v. Midstates Petroleum Co., LLC*, 2012-2055 (La. 3/19/13); 112 So.3d 187, 192.
[48] *Williams v. Great American Insurance Company*, 240 F.Supp.3d 523, 528 (E.D.La. 2017).
[49] *Compare* R. Doc. 49 at 10 ("the exculpatory clause unquestionably encompasses actions that are not limited to 'operations'") *with* R. Doc. 44 at 4 ("[exculpatory] clauses do not shield operators from liability for breach of contractual administrative and accounting duties like Shell's breaches here").

6

the meaning of a contractual provision does not render the provision ambiguous."[50] When the parties disagree over the meaning of an unambiguous contract, the court must determine the parties' intent from the agreement itself.[51]

A. <u>Field Operations and Administrative Duties</u>

The text of Article 1 ("Definitions") references two types of operations conducted in the field: "development operations" and "exploratory operations."[52]

> 1.2 <u>Development Operations</u> shall mean all *operations conducted in the Joint Area* not considered an Exploratory Operation, including but not limited to the drilling of a Development Well, Development Step-Out Well, the design, construction and installation of a Platform and associated facilities, and the design, construction and installation of a Subsea Production System and a Subsea Well Completion . . . [53]
> 1.7 <u>Exploratory Operations</u> shall be those operations directly associated with the drilling of an Exploratory Well. [54]
> 1.22 <u>Operator</u> shall, except as otherwise provided in Article 10.5 hereof, mean the Party designated by this Agreement *to conduct the exploration, development, producing, and associated operations on the Joint Area* for the production of oil and gas therefrom.[55]

These definitions directly link the term "operations" to the conduction of physical activities on-site, such as drilling, production, and construction, and the design of materials or structures used for such actions. Moreover, "operator" is distinguished from other parties specifically by the grant of rights to conduct operations in the field: "to conduct the exploration, development, producing, and associated operations on the Joint Area." Accordingly, the use of these terms in other provisions, such as the exculpatory clause, necessarily includes these associations.

---

[50] *Campbell v. Melton*, 2001-2578 (La. 5/14/02); 817 So.2d 69.
[51] *Lobell v. Rosenberg*, 2015-0247 (La. 10/14/15); 182 So.3d 83, 89 ("When a clause in a contract is and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit, as it is not the duty of the courts to bend the meaning of the words of a contract into harmony with a supposed reasonable intention of the parties.").
[52] R. Doc. 49 at 3.
[53] UOA § 1.2 (emphasis added).
[54] UOA § 1.7
[55] UOA § 1.22 (emphasis added).

Article 6 of the UOA, titled "Authority and Duties of Operator," provides in relevant part:

> <u>6.1 Exclusive Right to Operate.</u> Unless otherwise provided, Operator shall have the exclusive right and duty to conduct all operations pursuant to this Agreement.
> <u>6.2 Workmanlike Conduct.</u> Operator shall conduct all operations in a good and workmanlike manner, as would a prudent operator under the same or similar circumstances. *Operator shall not be liable to the Parties for losses sustained or liabilities incurred as a result of its actions as Operator except such as may result from its gross negligence or willful misconduct.* Unless otherwise provided, Operator shall consult with the Parties and keep them informed of all important matters.[56]

The language of this provision is consistent with the distinction between field operations and administrative duties. The reference to "Workmanlike Conduct" in the subheading of section 6.2 clearly applies to the conduction of field operations: the standard for performing drilling, production, exploration, and well abandonment is considered "workmanlike." On the other hand, accounting or administrative conduct is not normally described as "workmanlike."[57] As the Tenth Circuit stated, "[w]hile a higher standard for breach might apply to drilling, extraction, and other risky "operations" because most operators have the same incentive as non-operators to do well in physical operations, it is nonsensical to apply such a standard to administrative and accounting duties where the operator can profit by cheating, or simply overcharging, its working interest owners."[58]

---

[56] UOA § 6.2 (emphasis added).
[57] *Abraxas Petroleum Corp. v. Hornburg*, 20 S.W.3d 741, 759 (Tex. 2000) ("The operator's limitation of liability is linked directly to imposition of the duty to act as a reasonably prudent operator, which strictly concerns the manner in which the operator conducts drilling operations on the lease"). Although the *Abraxas* line of cases was abrogated by the Texas Supreme Court in *Reeder*, this Court finds the *Abraxas* court's reasoning instructive.
[58] *Rocky Mountain Prod., LLC v. Ultra Resources, Inc.*, 415 F.3d 1158 (10th Cir. 2005).

B. The Reach of the Exculpatory Clause

The text of section 6.2, the contract as a whole, and the purpose of exculpatory clauses in joint operating agreements, all lead this Court to conclude that the UOA distinguishes between field operations and administrative conduct. The Court finds that section 6.2's exculpatory clause applies only to claims for breach of the operator's duty to prudently conduct field operations.[59]

The exculpatory clause of section 6.2 requires only that claims arising from SOI's field operations, such as drilling, production, and exploration, require a showing of gross negligence or willful misconduct on the part of the Operator. Section 6.1 gives the Operator the sole ability to conduct field operations pursuant to the UOA. The first sentence in section 6.2 establishes that the Operator is subject to a "prudent operator" standard for this activity. The next sentence explicates the legal import of this standard: the Operator is not liable for any losses sustained "as a result of its actions as Operator" unless they are the result of gross negligence or willful misconduct.

Moreover, the Court's interpretation is consistent with a plain reading of the UOA in its entirety. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole."[60] The UOA is a comprehensive agreement governing the relationship of the parties and includes detailed provisions for data management,[61] accounting procedures,[62] and voting

---

[59] Courts in the Ninth and Tenth Circuits have reached the same result. *See Rocky Mountain Prod., LLC v. Ultra Resources, Inc.*, 415 F.3d 1158 (10th Cir. 2005) (applying Wyoming law); *Forest Oil Corp. v. Union Oil Comp.*, 2006 WL 905345 (D. Alaska 2006) (interpreting Alaska law).
[60] LA. CIV. CODE art. 2049; *see Clovelly Oil Co., LLC v. Midstates Petroleum Co., LLC*, 2012-2055 (La. 3/19/13); 112 So.3d 187, 192.rocmoun
[61] UOA, Art. 8. R. Doc. 38-2 at 18.
[62] UOA, Art. 9. R. Doc. 38-2 at 19.

procedures.[63] Section 6.5, "Records," provides that the "Operator shall keep accurate books, accounts, and records of operations."[64] Article 9 provides that "All charges, credits, and accounting for expenditures shall be pursuant to Exhibit 'C.'"[65] Exhibit C, the "Accounting Procedure Offshore Joint Operations,"[66] provides the method for billing non-operations and clearly gives such parties the right to protest or question the corrections thereof, with no mention that a showing of gross negligence or willful misconduct is required:

> 2. <u>Statements and Billings</u>
> Operator shall bill Non-Operators on or before the last day of each month for their proportionate share of the joint Account for the preceding month. Such bills will be accompanied by statements which identify the authority for expenditure, lease or facility, and all charges and credits, summarized by appropriate classifications of investment and expense except that items of Controllable material and unusual charges and credits shall be separately identified and fully described in detail.[67]
>
> 4. <u>Adjustments</u>
> Payment of any such bills shall not prejudice the right of any Non-Operator to protest or question the correctness thereof; provided, however, all bills and statements rendered to Non-Operators by Operator during any calendar year shall conclusively be presumed to be true and correct after twenty-four (24) months following the end of any such calendar year, unless within the said twenty-four (24) month period a Non-Operator takes written exception thereto and makes claim on Operator for adjustment. No adjustment favorable to Operator shall be made unless it is made within the same prescribed period. The provisions of this paragraph shall not prevent adjustments resulting from a physical inventory of Controllable Material as provided for in Section V.[68]
>
> 5. <u>Audits</u>
> A. A Non-Operator, upon notice in writing to Operator and all other Non-operators, shall have the right to audit Operator's accounts and records

---

[63] UOA, Art. 7. R. Doc. 38-2 at 14.
[64] UOA Art.6.5, R. Doc. 38-2 at 12.
[65] UOA Art. 9, R. Doc. 38-2 at 19.
[66] R. Doc. 38-2.
[67] UOA Exhibit C, R. Doc. 38-2 at 73.
[68] *Id.*

10

relating to the Joint Account for any calendar year within the twenty-four (24) month period following the end of such calendar year . . .[69]

Applying the exculpatory clause to the operator's administrative duties and the rights of the non-operators, particularly as set forth in Exhibit C, would undermine the force of these provisions. As noted by one authority on oil and gas operating agreements, "it is difficult to perceive why the parties would include explicit and detailed directions on administrative matters that are supplemental to 'operations' if they did not intend the operator to be liable for breach of those matters."[70] It makes far more sense to read the exculpatory clause in section 6.2 to refer only to actions taken pursuant to the grant of field operational rights and duties found in section 6.1.

Finally, the underlying justifications for exculpatory clauses are not advanced by extending the scope of the clause to cover administrative duties. Exculpatory clauses in joint operating agreements essentially govern the distribution of liability in response to the inherently risky nature of oil and gas exploration and production. Were operators held to a simple negligence standard for all conduct in the oilfield, "[t]he prospect of liability for massive losses resulting from difficult and inherently hazardous operations for which one is not compensated for the risk assumed would quickly discourage many industry parties from serving as operator."[71]

Exculpatory clauses limiting liability for negligence in field operations thus play an essential role in the formation and success of joint oilfield operations. This rationale does not justify the application of the exculpatory clause's higher standard to the actions of the operator that do not entail the same degree of risk, however. "The usual reason for using

---

[69] *Id.*
[70] Gary B. Conine, *The Prudent Operator Standard: Applications Beyond the Oil and Gas Lease*, 41 NAT. RESOURCES J. 23, 68 n.168 (2001).
[71] Conine, *supra* note 70, at 70.

an exculpatory clause is to preclude liability for blowouts or similar catastrophes, rather than to avoid liability for unintentional breaches of contract."[72] Unlike the highly dangerous operations protected by the exculpatory clause, the performance of administrative duties "does not generally involve extraordinary risks against which the operator should be protected."[73]

## CONCLUSION

The exculpatory clause in section 6.2 of the UOA applies only to the operator's duty to perform field operations. It does not require a pleading of gross negligence or willful misconduct to properly allege claims of breach of the operator's administrative and accounting duties. As noted above, Defendant's counterclaim does not allege a breach of SOI's duty to prudently conduct field operations. Rather, the allegations involve breaches of accounting or administrative duties specifically set forth in the UOA, and pleading that the breaches resulted from gross negligence or willful misconduct is not required.[74] Thus, this Court finds that Defendant has properly alleged legally cognizable claims in its counterclaim.

**IT IS ORDERED** that the Plaintiff's partial motion to dismiss for failure to state a claim is **DENIED**.

**New Orleans, Louisiana, this 20th day of September, 2017.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[72] Ernest E. Smith, *Joint Operating Agreement Jurisprudence*, 33 WASHBURN L. J. 834 (1994).
[73] Conine, *supra* note 70 at 68 n.168.
[74] Even if the claims did require a showing of gross negligence or willful misconduct, as SOI alleges, Eni's counterclaim would satisfy the requirements of pleading. Eni alleges SOI acted in bad faith, concealed important matters and facts, abused its position as operator, and engaged in gross negligence and willful misconduct. R. Doc. 32, para. 21,25, 26, 27, 28, 30, 31, 33, 34, 37, and 38. The alleged breaches may or may not actually meet that standard on the merits, but that is not a question to be decided in a 12(b)(6) motion to dismiss.