UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SHELL OFFSHORE, INC.                                    CIVIL ACTION

VERSUS                                                  NO. 16-15537

ENI PETROLEUM US LLC ET AL.                             SECTION "E" (2)

## ORDER AND REASONS ON MOTION

This is a contract dispute concerning offshore rig operations and the governmentally mandated abandonment of four oil field wells located on the Outer Continental Shelf. The disputed motion of defendant Eni Petroleum US LLC ("Eni") to file summary judgment response, material facts, and exhibits under seal, Record Doc. No. 124, is pending before me. I deferred the motion and temporarily placed the exhibits under seal pending further court order. Record Doc. Nos. 126.

Eni's motion to seal concerns its response to Shell's motion for summary judgment, 22 exhibits in support of its response, and Eni's statement of material facts in support of its response. The exhibits consist of documents that Shell marked as confidential during discovery. Eni moved to file the exhibits under seal only because the protective order in this case requires that it do so, pending the court's determination of the propriety of sealing under Local Rule 5.6. Record Doc. No. 45. However, Eni actually <u>opposes</u> filing the exhibits under seal and argues that they are <u>not</u> confidential. I directed Shell Offshore Inc. ("Shell") to file a non-confidential memorandum in response to Eni's motions to seal "to establish good cause under Fed. R. Civ. P. 26(c)(1)(G) and (H), including . . . all <u>evidence</u> necessary to establish and support the confidential nature of the subject materials and why

Shell's interest in confidentiality outweighs the public's interest in an open court record." Record Doc. No. 126. Shell filed a timely opposition memorandum. Record Doc. No. 142. Shell argues that the 22 exhibits to Eni's response to Shell's motion for summary judgment contain sensitive and confidential commercial information; that filing the exhibits in the public record could harm its competitive standing; and that its interest in confidentiality outweighs the public interest in an open court record.

The court is a public forum. Its record is presumptively a <u>public</u> record, open to view by all, and requests to seal the court's record are <u>not</u> lightly granted or considered. The decision to seal a record "must be made in light of the strong presumption that all trial proceedings should be subject to scrutiny by the public." <u>United States v. Holy Land Found.</u>, 624 F.3d 685, 690 (5th Cir. 2010) (quotation omitted).

> To determine whether to disclose or seal a judicial record, the Court must balance the public's common law right of access against the interests favoring non-disclosure. Courts recognize a common law right to access judicial records and proceedings, but the right is not absolute. Public access serves to enhance the transparency and trustworthiness of the judicial process, to curb judicial abuses, and to allow the public to understand the judicial system better. It follows then that the district court's discretion to seal the record of judicial proceedings is to be exercised <u>charily</u>. Although countervailing interests can outweigh the right of public access, <u>the party seeking to overcome the presumption of access bears the burden</u> to show that the interest in secrecy outweighs the presumption. The decision as to access is left to the discretion of the trial court, but <u>any doubt must be construed in favor of disclosure</u>.

<u>Liljeberg Enters. Int'l, LLC v. Vista Hosp. of Baton Rouge, Inc.</u>, No. 04-2780, 2005 WL 1309158, at *1 (E.D. La. May 19, 2005) (quotations omitted) (emphasis added) (citing

Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 599 (1978); Grove Fresh Distribs., Inc. v. Everfresh Juice Co., 24 F.3d 893, 897 (7th Cir. 1994); Leucadia, Inc. v. Applied Extrusion Techs., Inc., 998 F.2d 157, 165 (3d Cir. 1993); Sec. & Exchg. Comm'n v. Van Waeyenberghe, 990 F.2d 845, 848-49 (5th Cir. 1993); Bahwell v. Stanley-Bostitch, Inc., No. 00-0541, 2002 WL 1298777, at *1 (E.D. La. June 10, 2002); Marcus v. St. Tammany Parish Sch. Bd., No. 95-3140, 1997 WL 313418, at *5 (E.D. La. June 9, 1997)); accord Reichert v. Starring, No. 11-2171, 2011 WL 4404117, at *1 (E.D. La. Sept. 21, 2011); Pamlab, L.L.C. v. Brookstone Pharm., L.L.C., No. 09-7434, 2010 WL 4363870, at *2-3 (E.D. La. Oct. 22, 2010) (citing Brown & Williamson Tobacco Corp. v. Fed. Trade Comm'n, 710 F.2d 1165, 1179-80 (6th Cir. 1983)).

> The First Amendment presumes that there is a right of access to proceedings and documents which have historically been open to the public and where the disclosure of which would serve a significant role in the functioning of the process in question. This presumption is rebuttable upon demonstration that suppression "is essential to preserve higher values and is narrowly tailored to serve that interest."

Grove Fresh Distribs., 24 F.3d at 897 (quoting Press-Enter. Co. v. Superior Ct., 464 U.S. 501, 510 (1984)) (additional quotation omitted) (emphasis added).

> [A] district court has the discretion to seal a record, but we think that this discretion should be used with care and exercised only where the justifications for doing so appear considerably stronger than...the public's right to be informed. On a broad public level, . . . litigation with millions at stake, ought to be litigated openly . . . . As the Third Circuit has noted, "[p]ublic confidence [in our judicial system] cannot long be maintained where important judicial decisions are made behind closed doors and then announced in conclusive terms to the public, with the record supporting the court's decision sealed from public view."

In re High Sulfur Content Gas. Prods. Liab. Litig., 517 F.3d 220, 230 (5th Cir. 2008) (quotation omitted) (quoting United States v. Cianfrani, 573 F.2d 835, 851 (3d Cir. 1978)) (emphasis added).

As the party seeking sealing in the public record, Shell bears the burden of showing good cause for this kind of protection. Fed. R. Civ. P. 26(c)(1). The burden is "to show the necessity of [the protective order's] issuance, which contemplates a <u>particular</u> <u>and</u> <u>specific</u> demonstration of fact as distinguished from stereotyped and conclusory statements." In re Terra Int'l, 134 F.3d 302, 306 (5th Cir. 1998) (quoting United States v. Garrett, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978))(emphasis added); see also United States v. Talco Contractors, Inc., 153 F.R.D. 501, 513 (W.D.N.Y. 1994) ("Good cause must be established and not merely alleged.").

To warrant filing the materials under seal, Shell has the <u>burden of proof</u> to establish that they constitute "a trade secret or other confidential research, development, or commercial information," Fed. R. Civ. P. 26(c)(1)(G); that Shell's interest in secrecy outweighs the presumption of a public record <u>and</u> that disclosure "'would cause an identifiable, significant harm.'" Morton v. Cooper Tire & Rubber Co., 288 F.R.D. 126, 128 (N.D. Miss. 2012) (quoting M-1 LLC v. Stelly, 733 F. Supp. 2d 759, 801 (S.D. Tex. 2010)); accord Slide Fire Sols., LP v. Bump Fire Sys., LLC, No. 3:14-CV-3358-M, 2016 WL 3352006, at *2 (N.D. Tex. Feb. 4, 2016); Acme Truck Line, Inc. v. Gardner, No. H-13-3152, 2014 WL 6680667, at *2 (S.D. Tex. Nov. 25, 2014).

"[T]here is no absolute privilege for trade secrets and similar confidential information." Federal Open Mkt. Comm. v. Merrill, 443 U.S. 340, 362 (1979). " By its terms [Rule 26(c)(1)(G)] requires [the movant] to first establish that the information sought is a trade secret and then demonstrate that its disclosure might be harmful." ITT Electro-Optical Prods. Div. v. Electronic Tech Corp., 161 F.R.D. 228, 230 (D. Mass. 1995); accord Hill v. Eddie Bauer, 242 F.R.D. 556, 561 (C.D. Cal. 2007)(citing In re Remington Arms Co., 952 F.2d 1029, 1031-32 (8th Cir. 1991). "'That showing requires specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations [of] potential harm.'" Slide Fire, 2016 WL 3352006, at *2 (quoting Occidental Chem. Corp. v. La. Pub. Serv. Comm'n, No. 06-894-JJB-DLD, 2008 WL 566833, at *2 (M.D. La. Feb. 29, 2008)); accord Acme Truck, 2014 WL 6680667, at *2 (citing Smith v. Jaramillo, 394 F. App'x 183, 186 (5th Cir. 2010)).

I find that the competitive impacts postulated in Shell's submissions are wholly conclusory and speculative and are not sufficient to establish good cause or to sustain Shell's burden to establish sealing justification that is stronger than the public interest in the open nature of this court's record. In response to my order, Record Doc. No. 126, Shell produced a single perfunctory piece of evidence, the declaration of Kent Abadie, Exhibit A. Record Doc. No. 142-1. Paragraphs 6 and 7 of Abadie's declaration contain purely conclusory statements about the confidential nature and relevance of the exhibits attached to Eni's response to Shell's motion for summary judgment. Record Doc. No. 142-1 at ¶

¶ 6 and 7. Paragraphs 6 and 7 contain hedge words that Shell "would not normally reveal" this information to third parties, insinuating that sometimes it does. In addition, Abadie's conclusory determinations of confidentiality and relevance are matters determined by the court, not the parties. SCB Diversified Mun. Portfolio v. Crews & Assocs., Inc., 2012 WL 113641, at *4 (E.D. La. Jan. 12, 2012) (Roby, MJ). In paragraph 8, Abadie cites only the "potential" – not actual – competitive harm that may result from disclosure of the exhibits. Record Doc. No. 142-1 at ¶ 8. He merely postulates a process of analytical extrapolation in which competitors might engage "to replicate," not to harm, Shell's conduct of business. These are not specific demonstrations of fact sufficient to establish the confidential nature of the exhibits.

Neither Shell's confidentiality agreement with other parties, Record Doc. No.142-1 at ¶ 10, nor its own internal policy are determinative of the sealing issue. Record Doc. No. 142-1 at ¶ 9. As to private agreements, see Brown & Williamson Tobacco Corp.,710 F.2d at 1180 ("The confidentially agreement between the parties does not bind the court in any way."); Borum v. Smith, No. 4:17-CV-00017-JHM, 2017 WL 3014487, at *3 (W.D. Ky. July 14, 2017); Allergan, Inc. v. Teva Pharm. USA, Inc., No. 2:15-CV-1455-WCB, 2017 WL 132265, at *3 (E.D. Tex. Jan. 12, 2017) (citing Wyeth v. Orgenus Pharma Inc.,No. 09-3235 FLW, 2010 WL 4117157, at *4 (D.N.J. Oct. 19, 2010)); In re Enron Corp. Sec., Derivative & ERISA Litig., 623 F. Supp. 2d 798, 838 (S.D. Tex. 2009). As to the mere existence of an "internal policy that prohibits [the exhibits'] release to third parties," see

Yountville Investors, LLC v. Bank of America, N.A., 2009 WL 411089 (W.D. Wash. Feb. 17, 2009) ("While the parties may themselves regard these documents as "confidential," they do not contain the type of information (account numbers, personal data, trade secrets, and so forth) that would justify sealing.")). In sum, Shell's speculative and conclusory statements and arguments about confidentiality and competitive harm are insufficient to carry its burden to show that the materials are so confidential or commercially sensitive that its interest in secrecy outweighs the presumption of openness of this court's record and proceedings.

Abadie's affidavit identifies nothing specific about or in the materials that is trade secret, research, development or commercially sensitive. Nothing on the face or in the content of the materials obviously meets these criteria other than Shell's own labeling. Most of the content consists of nothing more than routine business-related communications and assessments. Revenue generation, costs and abandonment operations are not matters of mere business interest alone when they concern activities on the Outer Continental Shelf, where the public has a substantial interest in the same topics.

Shell argues that "[t]he availability of these documents in the public will highly prejudice [Shell]. This case involves the operations of two multinational oil and gas companies in the Gulf of Mexico. The information in the documents not only pertains to [Shell's] other operations in the Gulf of Mexico, but, in some cases, world-wide." Record Doc. No. 142 at p. 8-9. I disagree with Shell's conclusion. Instead, I find that the

presumption favoring an open court record is supported in this case by the fact that Shell and Eni are multi-national corporations conducting offshore drilling operations under <u>public</u> leases subject to the Outer Continental Shelf Lands Act. 43 U.S.C. § 1331, et seq.; Record Doc. No. 1 at ¶¶ 6-7, 16. Shell's argument is unpersuasive because it fails to recognize the particular importance of the openness of this court's record in a case involving activities subject to extensive government oversight in a geographical location in which the public has substantial interest.

This dispute alleges almost $74,000,000 in damages, Record Doc. No. 109 at ¶ 9, in connection with the governmentally mandated abandonment of four wells in the highly regulated oil and gas fields of the Outer Continental Shelf. Record Doc. No. 109-1 at p. 5. The Outer Continental Shelf of the Gulf of Mexico is an area of "[f]ederal ownership" where entities like Shell and Eni may conduct this kind of business only pursuant to governmental lease and heavy governmental regulation, including "the requirements of some 30 federal laws," with the revenue of such leases shared between coastal states and the United States treasury. Oil and Gas Leasing on the Outer Continental Shelf http://www.boem.gov/Leasing (last visited Sept. 21, 2017). The substantial public interest in this business activity is reflected in the leasing section of the United States Bureau of Ocean Energy Management's ("the Bureau") website, which states:

> [The Bureau] takes seriously its responsibilities to develop our nation's oil and gas resources in an environmentally sound and safe manner and to obtain fair market value <u>for the American people</u>. [The Bureau] is committed to

being responsive to the public's concerns and interests by maintaining a dialogue with all affected parties.

Id. (emphasis added).

Having considered all of these factors, I find that Shell has not carried its evidentiary burden to show that good cause exists to protect the subject materials from disclosure by sealing them in this court's presumptively public record. Accordingly, IT IS ORDERED that Eni's motion to seal is DENIED.

New Orleans, Louisiana, this \_\_\_22nd\_\_\_ day of September, 2017.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE